IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OOPS OF NEW YORK, INC. D/B/A BOXCAR LOUNGE D/B/A LUCKY; ABIGAIL EHMANN | |
| | Index No. 20CV7011 |
| PLAINTIFF, | |
| vs. | |
| | ECF CASE |
| ANDREW M. CUOMO, GOVERNOR OF THE STATE OF NEW YORK, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; VINCENT G. BRADLEY, CHAIRMAN OF THE NEW YORK STATE LIQUOR AUTHORITY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, SLA INVESTIGATOR JESSICA WELKER, and SLA INVESTIGATOR CHARLES SANDS. | JURY TRIAL DEMANDED |
| DEFENDANTS. | |

Plaintiffs Oops Of New York, Inc., D/B/A Boxcar Lounge D/B/A Lucky, and Abigail

Ehmann, through their attorneys, respectfully file this Complaint against the Defendants named

herein.  The allegations in the Complaint are based on the knowledge of Plaintiffs as to

themselves, and on information and belief, including the investigation of counsel, as to all other

matters.

## PRELIMINARY STATEMENT

1.       Plaintiff Abigail Ehmann brings this action to enforce the protections of the First

and Fourteenth Amendments of the United States Constitution.  Plaintiff Ehmann is a New York

resident and business owner who spoke up on an issue of national and local importance and

suffered the swift retribution of the State Government as a result.  A responsible bar owner who

enforced social distancing and all other appropriate measures in the fight against the Covid-19

virus, Plaintiff Ehmann has been singled out and punished for suggesting that New York State

make a minor and eminently sensible change to its anti-Covid measures.   Plaintiffs should not

have the power of the State marshalled against them and be made to lose their livelihood simply

for exercising rights guaranteed to them under the Constitution of the United States.

## JURISDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over the

claims asserted by Plaintiffs as this action involves claims based upon Article I of the United States

Constitution, the First, Fifth, and Fourteenth Amendments to the United States Constitution (*U.S.

Const. amend. I, V, and XIV*), interpretation of the Due Process and Equal Protection Clauses of the

Fourteenth Amendment to the U.S. Constitution, and seeks to prevent Defendants from interfering

with federal rights secured by the United States Constitution.

3.      Pursuant to 28 U.S.C. § 1343(a)(3) and (4), the Court has subject matter jurisdiction

over the claims asserted by Plaintiff as this action is brought to redress deprivations under color of

State law, statute, Executive Order, ordinance, regulation, custom or usage of rights, privileges, and

immunities secured by the United States Constitution.

4.      Pursuant to 28 U.S.C. § 1367, the Court has supplemental and pendent subject

matter jurisdiction over the State law claims asserted by Plaintiff because the State law claims,

based upon Defendants' violations of New York State Executive Law § 29-a, are so related to the

other claims in this action over which the Court has original subject matter jurisdiction, and arise

from a common nucleus of operative facts, that the State law claims form part of the same case or

controversy under Article III of the United States Constitution (*U.S. Const. art. III*).

5.      Pursuant to 28 U.S.C. § 1391(b), venue is properly vested in this Court because at

least one Defendant conducts substantial business in this judicial district, all Defendants reside in

the State of New York, and a substantial part of the events giving rise to these claims occurred in this judicial district.

6. There is a present and actual controversy between the parties.

7. The relief requested by Plaintiff in this action is authorized pursuant to:

a. 28 U.S.C. § 1343(a)(4) (to recover damages, or to secure equitable or other relief, for the protection of civil rights);

b. 28 U.S.C. § 1651(a) (injunctive relief);

c. 28 U.S.C. §§ 2201 and 2202 (declaratory relief, and other necessary or proper relief based upon a declaratory judgment);

d. 42 U.S.C. § 1983 (deprivation of rights, privileges, and immunities secured by the United States Constitution); and

e. 42 U.S.C. § 1988 (award of attorneys' fees and costs)

## JURY DEMAND

8. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

### Plaintiffs

9. Plaintiff Oops Of New York, Inc. D/B/A Boxcar Lounge D/B/A Lucky is a bar and lounge, which maintains a food menu, and which operates at 168 Avenue B in the East Village neighborhood of New York City. Plaintiff Oops Of New York, Inc. is a domestic business corporation organized under the laws of the State of New York.

10. Plaintiff Abigail Ehmann (hereinafter "Abby Ehmann") is the owner of Oops Of New York, Inc., and the Proprietrix of Boxcar Lounge D/B/A Lucky at 168 Avenue B in New York City (hereinafter "Lucky").

**Defendants**

11.     Defendant Cuomo is and was the Governor of the State of New York, and is and was acting under color of State law and in his official capacity, at all times relevant to the assertions made by Plaintiff herein, and is sued in his individual and official capacities. Defendant Cuomo's principal place of business is located at the State Capitol Building, Albany, New York 12224.

12.     Defendant Vincent G. Bradley is the Chairman of the New York State Liquor Authority, and is and was acting under color of State law and in his official capacity, at all times relevant to the assertions made by Plaintiff herein, and is sued in his individual and official capacities. Defendant Bradley's principal place of business is located at NYSLA 163 West 125th Street, New York, NY 10027.

13.     Defendant SLA Investigator Jessica Welker is an employee of the State of New York working for The Justice Center, and upon information and belief is part of an SLA special investigation task force, is and was acting under color of law and in her official capacity, at all times relevant to the assertions made by Plaintiff herein, and is sued in her individual and official capacities.

14.     Defendant  SLA Investigator Charles Sands is an employee of the State of New York, and upon information and belief is part of an SLA special investigation task force, and is and was acting under color of law and in his official capacity at all times relevant to the assertions made by Plaintiff hereing, and is sued in his individual and official capacities.

## STATEMENT OF FACTS

15.     New York State, under the leadership of Governor Andrew M. Cuomo, has for the most part pursued a cautious, incremental, and scientifically backed, evidence-based approach to the reopening for business in the face of the world-wide Covid-19 virus ("Covid").

16.     As a result of its largely cautious, incremental, and scientifically backed, evidence-based approach to the reopening for business, New York State has gone from having one of the highest Covid infection rates in the country to having one of the lowest.

17.     As of July 16, 2020 and as a result of its largely cautious, incremental, and scientifically backed, evidence-based approach to the reopening for business, New York State was one of only a few States that were on track to contain the Covid virus.

18.     Governor Andrew Cuomo has been broadly lauded for his handling of the pandemic and credited with saving countless lives based on his strong and vocal leadership, including daily press-briefings during the height of pandemic.

19.     As a result of the leadership of Governor Cuomo and the cautious, incremental, and scientifically backed, evidence-based approach to the reopening for business,  as of the filing of this pleading, New York State have had more than two uninterrupted weeks with daily Covid-19 positivity rate below 1 percent.

20.     On March 7, 2020, Defendant Cuomo issued Executive Order 202, which, in part, declared a State Disaster Emergency for the State of New York based upon the fact that travel related cases and community contact transmission of COVID-19 had been documented in New York State, and that similar declarations had previously been made by the World Health Organization and United States Health and Human Services Secretary, Alex M. Azar II.

***Executive Order 202.52***

21.        On July 16, 2020, Governor Cuomo issued Executive Order No. 202.52, which applies to all businesses licensed by the State Liquor Authority for on premises service of alcoholic beverages under the condition that they make food available, "*shall serve alcoholic beverages* . . . *only if the service of such alcoholic beverage is accompanied by the purchase of a food item by each individual that is being served an alcoholic beverage* . . . ." (emphasis added.)

22.    Executive order 202.52 imposes no social distancing requirements and does not even mention social distancing.  The sole subject addressed by the order is the requirement that people buy and eat food if they want to order a drink.

23.    In issuing Executive Order 202.52 Defendants did not – because they could not – cite any data indicating that the spread of Covid is any less likely among people who order food and a drink in an establishment that enforces all mandated social distancing measures than it is among people who order a drink only in that same establishment.

24.    There is no data indicating that the spread of Covid is any less likely among people who order food and a drink in an establishment that enforces all mandated social distancing measures than it is among people who order a drink only in that same establishment. Simply put, none of the available scientific data from any study performed throughout the United States suggests there is any rational connection between Executive Order 202.52 and the legitimate Government goal of containing the Covid pandemic.

25.    Plaintiffs do not criticize Defendant Cuomo for taking steps and measures based on the data available to him at the time of the issuance of any Executive Orders, and recognizes the need for cautious planning and austere measures and exercise of emergency powers that may

temporarily infringe upon certain rights of the people when the data suggest there is  a rational basis for such measures.

26.     On June 23, 2020, Defendant Cuomo announced the creation of a multiagency task force spearheaded by the State Liquor Authority and the New York State Police to "crack down" on social distancing "violations" at restaurants across the state.

27.     Defendant Bradley has said of bars that have had their liquor licenses suspended under Executive Order 202.52, "The task force has been hard at work to protect the public's health and will continue to hold these establishments, who think they are above the law and immune to this pandemic, accountable for endangering the lives of New Yorkers."

### ***Plaintiff Ehmann's First Amendment Petition For Redress of Grievances***

28.     Plaintiff Abby Ehmann authored and posted a petition under the title "Seating Not Eating: Change Cuomo's Executive Order 202.52" on the web site Change.Org in response to Executive Order No. 202.52.

29.     Plaintiff Ehmann's "Seating Not Eating" petition on Change.Org states that Executive Order No. 202.52 was "[i]nspired by the troubling viral photos and videos of businesses that have flouted public safety."  Plaintiff's statement referred to the events which those photos and videos show as "outrageous instances [in which] the establishments were ignoring social distancing and allowing crowds to gather, with an alarming number of customers standing."

30.     Plaintiff Ehmann's "Seating Not Eating" petition on Change.Org declares that "New York is fortunate that our capable leadership has managed to flatten the curve and make us among the top states in the nation in virus containment. Restaurant and bar owners celebrate that success and want to help ensure that our numbers remain low."

31.     Plaintiff Ehmann's "Seating Not Eating" petition on Change.Org seeks to eliminate the requirement imposed by Executive Order No. 202.52 that an establishment serve food to any customer in order to serve that customer an alcoholic drink.  The petition reasons that: "If we, as business owners, are able to maintain social distancing, with tables six feet apart, and require that all our customers be seated, we can easily help contain the spread of the virus. SEATING NOT EATING is a far more elegant solution. It also does not require additional staffing or other expenditures that place an additional burden on an industry that is already suffering severe financial hardship."

32.     Plaintiff Ehmann's "Seating Not Eating" petition on Change.Org garnered significant media attention.  Plaintiff and her initiative Seating Not Eating have been featured on numerous cable, radio and television news reports, including The Daily News, Eater, 1010Wins Radio and more.

33.     Plaintiff Ehmann posted the petition on July 27, 2020.

34.     At the time of the filing of the pleading, Plaintiff Ehmann's "Seating Not Eating" petition on Change.Org had in excess of five-thousand signators.

### *Plaintiffs Maintain Strict Social Distancing Rules At Lucky*

35.     Plaintiffs do not operate under the theory that the customer is always right. Plaintiff Ehmann is a mother or sister figure to her customers and does not suffer fools gladly in her bar.

36.     With the pandemic looming and a national emergency called, Plaintiff Ehmann chose to close the bar before she was ordered to by the State of New York.  She closed Lucky to the public on Sunday March 15.  Although she had booked a private event for that evening, Plaintiff Ehmann felt that if Lucky was open she would be endangering her customers,

employees and friends.  She cancelled that event and closed the bar.  The following day, Plaintiff

Ehmann was told that all bars and restaurants would need to close by 8:00pm. Lucky's last day

of business was Saturday March 14.

37.     A few days later, the State Liquor Authority announced that bars and restaurants

could re-open and serve alcohol to go.  However, Plaintiff Ehmann had concerns about the

impact being open would have on her health and the health of her customers.  Thus, Plaintiff

Ehmann chose not to reopen for to-go service.

38.     However, once the SLA announced that bars and restaurants would be able to

open with outdoor service, Plaintiff Ehmann prepared to reopen, as Lucky has an outdoor

backyard.

39.     When Lucky reopened, Plaintiff Ehmann personally policed the backyard on a

moment-to-moment basis to ensure that people did not stand or mingle, and that they observed all

social distancing rules and practices.

40.     When Lucky reopened, Plaintiff Ehmann instituted all required safety protocols,

including signage that required customers to keep social distancing and wear masks when not

seated at their outdoor tables.  Plaintiffs required reservations for tables and strictly enforced that

tables could not be shared between different parties or groups.   No one was allowed to sit inside

the bar.  Plaintiffs supplied hand sanitizer and had frequent cleaning and sanitizing inside and

outside.

41.     Plaintiff Ehmann's strict implementation of safety protocols and insistence that

patrons wear masks chased away some business.  Plaintiff Ehmann thought that a small price to

pay to ensure the safety of her customer base.  In her own words, "while some potential customers

were turned off and left, others praised my somewhat over-the-top zeal about safety."

### *Plaintiffs' Liquor License Is Suspended*

42.     Plaintiff Lucky maintains a food menu and serves hot pocket sandwiches and soups to its customers when those customers order food.  Plaintiff Lucky, located at 168 Avenue B in the East Village neighborhood of New York City, is in close proximity to other bars which, like Lucky, serve both drinks and food.

43.     On August 3, 2020, Plaintiff Lucky was visited by members of the multiagency task force spearheaded by the State Liquor Authority and the New York State Police, Defendants Jessica Welker and New York State Police Investigator Charles Sands.  These individual defendants wore no badges or identifying SLA clothing.  At the time, Plaintiffs' signage indicated beer, cocktails and food all available, as shown below:

## TO-GO DRINKS!

**SUMMER LIBATIONS**

**REFRESHING PINT O' SUMMER IN A CUP: $14**
GREY GOOSE OR KETEL ONE & SAN PELLEGRINO LIMONE Y MENTA

**PINT OF FROZEN LEMONADE - $12**
FROZEN PINK LEMONADE
& YOUR CHOICE OF FLAVORED VODKA

**PINT OF FROZEN MARGARITA - $12**
NOT AS BESPOKE BUT...FROZEN!

**PINT OF FROZEN DAIQUIRI - $12**
FROZEN STRAWBERRY DAIQUIRI & RUM

**PINT O' BASIC COCKTAIL - $8**
GIN & TONIC, VODKA SODA, WHISKEY GINGER

**SPECIALTY COCKTAILS**

**PINT BESPOKE BLOODY MARY: $12**
THE CLASSIC, MADE TO ORDER

**PINT OF GIN & TONIC: $14**
MADE WITH HENDRICK'S GIN!

**PINT DARK MARGARITA: $14**
ILEGAL TEQUILA, FRESHLY SQUEEZED LIMES & JALAPEÑO SIMPLE SYRUP

**CANNED WINE - $6**
ROSÉ/RED/WHITE

**PINT DRAFT BEER**
PBR: $5
FOUNDERS ALL DAY IPA / VELTINS: $7
GUINNESS / UFO WHITE WHEAT
HARPOON REC LEAGUE: $8
RAGING BITCH IPA / DIRTY BASTARD: $9

**FOOD**
PEANUTS: $1 • POPCORN: $2
COTTON CANDY: $4
HOT POCKET: $10 • CUP O' SOUP: $10

44.     Defendants Welker and Sands asked Plaintiff Ehmann whether Lucky serves food.  Plaintiff Ehmann explained that she offered a small menu including hot pocket sandwiches and soup, but that no patron presently at Lucky had ordered food.

45.     Other neighborhood bars in close proximity to Lucky, which had tables with people drinking but not eating were not visited by the SLA personnel on August 3, 2020.

46.     Defendants Welker and Sands left a one-page printed document with a warning. That was the first warning that Plaintiff received.

47.     Defendants Welker and Sands the SLA personnel misreported their conversation with Plaintiff Ehmann to the SLA, claiming that Plaintiff Ehmann refused to serve or offer any food to her customers and claimed that she did not have to serve or offer food to her customers.

48.     In the investigative report, Defendants Welker and Sands reported false information concerning their conversation with Plaintiff Ehmann, writing, Plaintiff Ehmann stated "that her establishment does not prepare food.  She stated that if patrons would like, they can order food at neighboring restaurants and bring the food into her location."

49.     Further, the investigative narrative detail included that

> There were three tables of patrons seated outside in the backyard drinking what appeared to be alcoholic beverages and a table of patrons drinking what appeared to be alcoholic beverages at a table in front of the bar on the sidewalk.  **None of the patrons were standing and there was no crowding.** (emphasis added)

50.     The investigative form report submitted by Defendants Welker and Sands has options for seven different types of Covid violations that can be indicated including:

(i)      large congregating crowd (10 or more) on streets/sidewalks and within 100 feet of any licensed establishment consuming alcoholic beverages from open containers (20 points),

(ii)     Smaller congregating crowd on streets/sidewalks and within 100 feet of any licensed establishment consuming alcoholic beverages from open containers(2 points per standing patron);

(iii)   *any* <u>indoor</u> consumption of food or beverage (20 Points);
(iv)    sale of alcoholic beverages at bar/restaurant or to-go without accompanying (5 Points)(emphasis in original);
(v)     to go sale of alcoholic beverages in an open container – no lid, straw inserted, etc. (5 points);
(vi)    employees of licensed establishment not wearing face coverings, or not wearing properly (4 points);
(vii)   patrons (a) standing and consuming at bar/restaurant, and/or (b) ignoring social distancing (e.g., tables too close, more than 10 at table, standing around), and/or (c) not wearing face coverings when standing (2 points per patron);

51.     The investigative form report indicates all points should be added up and that "Any report with a total of 20+ points must be submitted before 6am the next day."

52.     Plaintiff Ehmann's report totaled 5 points only.

53.     The next day, August 4, 2020, Plaintiff's liquor license was summarily suspended.  Plaintiffs learned of the suspensions through the news media.  Lucky closed for business as a result of the suspension.

54.     No reason other than the fact that Plaintiff was not serving food was cited in the suspension.

55.     As of August 5, 2020, of liquor license suspended pursuant to Executive Order 202.52, none other than the suspension of Plaintiffs' license was predicated solely on the absence of food.

56.     Indeed, there are many bars in New York State that currently offer food to patrons but that serve alcohol to patrons who do not order food, but that enforce all mandated social distancing measures, and which have not suffered the suspension of their liquor licenses under Executive Order 202.52.  Plaintiff's business is similar in all material respects to other bars that enforce all mandated social distancing measures and that offer food to patrons but that serve alcohol to those patrons who do not order food.

57.     As of August 5, 2020, the vast majority of other liquor licenses suspended pursuant to Executive Order 202.52 involved circumstances in which patrons were mingling, and/or were not seated, and/or were gathering in crowds.   Many other liquor licenses suspended pursuant to Executive Order 202.52 involved circumstances in which business employees or owners were not wearing face coverings as required, and/or were encouraging patrons to leave the premises with open containers of alcohol with no lids, and/or were creating a nightclub-like environment with dancing, mingling and no observation of social distancing requirements.

58.     Plaintiff's liquor license remains suspended and Lucky remains closed.

### *SLA Procedures*

59.     Defendant Governor Cuomo announced on July 16, 2020 that "any establishment that receives three violations [of Executive Order 202.52] will be closed for business." The SLA's normal process is thus to provide three warnings before suspending a liquor license. Plaintiffs received only a single warning before their license was suspended.

60.     The SLA's normal process is to provide a hearing within seven days of a summary suspension.

61.     Plaintiffs have not been provided with a hearing since their liquor license was summarily suspended.  Plaintiffs' attorney for liquor license matters requested that the SLA provide them with a hearing and was told by the SLA that no hearings are being scheduled.   The SLA also informed Plaintiffs' attorney for liquor license matters that while they hoped to schedule a hearing 'shortly' they did not have a specific date when the would even start scheduling such hearings (though they hope  to be able to possibly have remote hearings in September).

62.     Plaintiffs' attorney for liquor license matters was also informed by SLA staff that they could not commit to any dollar amount Plaintiffs could pay as a fine that would allow Lucky to reopen prior to a hearing. It was explained that any agreement to reopen would have to be approved at Full Board meetings of the SLA.

63.     Only two executive meetings had yet to take place concerning summary suspensions due to executive order violations.  Six of twelve agreements presented for approval, by suspended licensors in conjunction with an SLA attorney, were rejected by the executive committee, and a higher fine was  then imposed with additional restrictions to be agreed to before the SLA would allow a license suspension to be rescinded.

### *New York State Executive Law § 29-a*

64.     Executive Order 202.52 was promulgated solely pursuant to the authority granted to the Governor of New York State by New York State Executive Law § 29-a.   Executive Law § 29-a(1) grants Defendant Cuomo the authority, by the issuance of Executive Order(s), to (emphasis added):

> *[T]emporarily* suspend any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action necessary *to cope with the disaster or if necessary to assist or aid in coping with such disaster.*

65.     Executive Law § 29-a(2) also provides, in relevant part (emphasis added):

> Suspensions shall be subject to the following . . . limits[:] . . . no suspension or directive shall be made which is not in the interest of the health or welfare of the public *and which is not reasonably necessary to aid the disaster effort*; [and] . . . any such suspension, order or directive shall provide for the *minimum deviation* from the requirements of the statute, local law, ordinance, order, rule or regulation suspended *consistent with the goals of the disaster action* deemed necessary[.]

66.     Thus, although Executive Law § 29-a confers certain powers upon Defendant Cuomo, it simultaneously imposes certain restrictions upon him; namely, that actions taken pursuant to Defendant Cuomo's authority thereunder be "reasonably necessary to aid in the

disaster effort," and that such actions provide for the "*minimum deviation*" from the suspended

statute, law, ordinance, order, rule or regulation, while remaining consistent with the goals of the

disaster action.

67.     The action of Defendants in shuttering Plaintiffs' business via Executive Order

202.52, are neither reasonably necessary to combat the COVID-19 pandemic, nor is it the

*minimum deviation* from any suspended statute, law, etc., such that Defendants' actions remain

consistent with the goal of containing the COVID-19 pandemic.

68.     Neither the uniqueness nor the severity of the COVID-19 pandemic justifies the

closure of Plaintiffs' business for failure to serve food, while maintaining all mandated and other

appropriate social distancing measures, to patrons who order a drink.

69.     There are precious few rights that we can claim as fundamental. Besides those

expressly enumerated in the United States Constitution, the public inherits those rights that are

either "deeply rooted in this Nation's history and tradition" or that are, by their nature, "implicit in

the concept of ordered liberty."


### *Defendants Actions Will Impose Irreparable Harm On Plaintiff Ehmann*

70.     Plaintiff Abby Ehmann earns her living as the owner of Plaintiff Oops of New

York and the Proprietrix of Plaintiff Lucky.

71.     Plaintiff Ehmann has worked in nightlife, mostly at what are called 'dive bars' her

entire adult life.  It has been her dream to own a small dive bar in the East Village during most of

these past 30 years.

72.     In 2016, Plaintiff Ehmann was alerted that a small bar on Avenue B was closing

as it could not sustain the rent with its customer base.  Even though this was a small place with a

pre-existing bar, there was still a significant cost for Plaintiff Ehmann to take over the lease, liquor license and open her own bar.

73.     Plaintiff Ehmann's elevator pitch to explain the bar was simple, "A dive bar for adults." She was not going to cater to the 25-year old demographic that many of the local bars sought. Lucky was going to be a watering hole for adults.

74.     Plaintiff Ehmann retained a liquor license lawyer and signed a lease with the landlord and an agreement with the prior owner to purchase some of the existing equipment and furniture. She applied for the liquor license to transfer to an entity that she created and waited four months for the transfer to be completed.

75.     Plaintiff Ehmann also spent money on renovations to the bar while awaiting the liquor license transfer.

76.     Plaintiff Ehmann's sister loaned her over $450,000 to open Lucky. The loan enabled Plaintiff Ehmann's to purchase the bar, pay the liquor license lawyer, pay the prior owner for the equipment and furniture, pay for renovations and enter into agreements with vendors for an ice machine, a walk-in refrigerator, liquor and more.

77.     Plaintiff Ehmann opened for business on June 29, 2016. Lucky maintained itself as what is known in New York City as a "Dive Bar."

78.     Dive bars normally have a small footprint and lower priced drinks. Dive bars do not often serve umbrellas in their cocktails and, like Lucky, are most often owned and operated by individuals, not corporate entities with multiple locations.

79.     Dive Bars are known to locals as having cheap drinks and unpretentious crowds. Dive Bars have lower prices, and therefore lower margins than bars owned by corporate entities.

While some bars have even named themselves Dive Bars, that is usually a good sign that they may no longer be a true dive bar, or that they never were.

80.     Dive Bars smaller footprint means most do not have a kitchen, and sell bar food using a microwave, pre-packaged food or recommend ordering in from a restaurant to deliver to the dive bar.  The rules as set out by Governor Cuomo in Executive Order 202.52 unfairly impact dive bars.

81.     Dive Bars are mom and pop shops where the owners are known to, and supported by, the neighborhood.

82.     In the four years it has been open, Plaintiff Ehmann has turned a profit.  She has been able to stay steady on all of her monthly obligations (rent, insurance, cable), was making timely payments to all of the vendors and had also been making monthly payments to pay down the loan from her sister.

83.     Plaintiff Ehmann was ready for her best financial summer yet at Lucky when the Covid pandemic swept through the City, State, and Country.

84.     For the month of July, Lucky was at about 50% of its normal revenue, enabling Plaintiff Ehmann to pay her landlord 50% of her monthly rent obligation and not fall further behind on her vendor debts.

85.     The SLA's summary suspension of Lucky's liquor license, combined with the SLA's failure to make available any procedure to timely challenge the suspension, will likely cause Plaintiff Ehmann to lose her bar.

86.     Additionally, the neighborhood and customer base for Lucky have already learned, or will soon learn that it has been closed for Covid safety violations.

87.     Since Governor Cuomo has let everyone know that a bar will not be closed until it has three strikes or an egregious violation, the neighborhood and customers will believe that Lucky was closed for either rthree strieks or an egregious violation.

88.     The goodwill that Plaintiff Ehmann has built up with Lucky's customer base, as well as with the neighborhood, will be lost forever if the summary suspension is not lifted.

89.     The neighborhood and customer base will associate Lucky with the other bars that have been closed due to egregious violations, and will not distinguish the minor violation that Lucky incurred.

90.     Plaintiff Ehmann is in debt to Con Edison in excess of $3,000.  She is in debt for her business liability insurance for approximately $2,000. By September 1, her debt to her landlord will be in excess of $34,000.  The outstanding loan to her sister remains unpaid in excess of $400,000.

91.     At sixty-one years of age, Lucky is not only Plaintiff Ehmann's livelihood, it is her life.  In her own words, the bar "gives me somewhere to go every day as well as earn a living. It is my social life, my cultural life and quite likely keeps me healthy and alive.  This was a one-time opportunity that will not present itself again.  I won't be able to get another loan and could never afford to buy another business.  If I am unable to reopen, I will be unable to pay my commercial lease and will lose my life's dream.  At my age, I don't expect I will ever be able to work in this industry again, much less find work elsewhere.  If I cannot reopen, I would wake up each day without a place to go, without a purpose.  Opening Lucky was a life-long dream come true... Losing Lucky would mean the remainder of my life, as I planned it, would essentially be taken away from me."

## <u>FIRST CLAIM FOR RELIEF</u>

### <u>DECLARING EXECUTIVE ORDER 202.52 TO BE UNCONSTITUIONAL</u>

92.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

93.     The provisions of Executive Order 202.52 that prohibit a bar that enforces all mandated and other appropriate social distancing measures from serving a drink to a patron unless that patron orders and eats food do not serve any significant government interest and is not narrowly tailored to achieve any legitimate state purpose.

94.     The provisions of Executive Order 202.52 that distinguish between patrons who eat while being served a drink and those who do not eat while being served a drink do not serve the significant and legitimate goal of containing and eliminating the Covid virus.

95.     There is no rational basis for the provisions of Executive Order 202.52 that distinguish between patrons who eat while being served a drink and those who do not eat while being served a drink.

96.     There is an actual, current and justiciable dispute between the parties concerning the provisions of Executive Order 202.52 that distinguish between patrons who eat while being served a drink and those who do not eat while being served a drink.

97.     Accordingly, Plaintiff seeks an Order of this Court declaring the provisions of Executive Order 202.52 that distinguish between patrons who eat while being served a drink and those who do not eat while being served a drink to be facially and substantively unconstitutional.

## SECOND CLAIM FOR RELIEF

## RETALIATION AGAINST THE EXERCISE OF FIRST AMENDMENT RIGHTS
### (42 U.S.C. § 1983)

98.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

99.     The First Amendment of United States Constitution guarantees Plaintiff Ehmann the right of free speech, including the right to petition the Government for a redress of grievances.

100.     The First Amendment of United States Constitution guarantees Plaintiff Ehmann the right of free speech, including the right to speak out on issues of public concern.

101.     Plaintiff Ehmann exercised her First Amendment rights to petition the Government for a redress of grievances and to speak out on issues of public concern when she posted on Change.Org her petition for a change to Executive Order No. 202.52.

102.     Plaintiff's exercise of her First Amendment rights to petition the Government for a redress of grievances and to speak out on issues of public concern motivated or substantially caused the State Liquor Authority to summarily suspend Lucky's liquor license.

103.     Because it has caused Lucky to close and remain closed, all Plaintiffs have been injured by the suspension of the liquor license.  Plaintiff Ehmann has lost substantial income as a result of the closure and will not be able to retain ownership of the bar if she cannot immediately reopen.

104.     Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF THE 5TH & 14TH AMENDMENTS - SUBSTANTIVE DUE PROCESS
### (42 U.S.C. § 1983)

105.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

106.     The Fifth Amendment, by and through the Fourteenth Amendment, provides substantive due process rights to individuals. Here, Defendants' actions have violated Plaintiffs' substantive due process rights.

107.     When those who are similarly situated are nevertheless treated differently, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires at least a rational basis for such disparate treatment, so as to ensure that all persons subject to legislation or governmental regulation are indeed being "treated alike, under like circumstances and conditions." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 602 (2008).

108.     Defendants cited as the pretextual reason for the suspension of Plaintiff's liquor license that Lucky was not serving food when the SLA personnel visited on August 3, and cited no other reason.

109.     Contrary to the pretextual reason cited, Defendants actually caused Plaintiffs' liquor license to be suspended in order to punish Plaintiff Ehmann for her exercise of the First Amendment rights to free speech and to petition the government for a redress of grievances. Defendants' action alleged in this paragraph constitutes selective enforcement.

110.     The vast majority of other businesses similarly situated to Plaintiffs – bars in the East Village neighborhood of New York and other bars in New York City and New York State which do offer food and that enforce all mandated social distancing measures but that serve alcohol to patrons who do not order food – have not suffered the summary suspension of their liquor licenses solely on the basis that they do not require customers who order a drink to also order and eat food.

111.    Plaintiffs have been injured in their business as a result of Defendant's selective enforcement of Executive Order 202.52.

112.    Defendants' summary suspension of Plaintiffs' liquor license while not summarily suspending the liquor licenses of other similarly situated businesses constitutes disparate treatment.

113.    There is no rational basis for the disparate treatment of Plaintiff by Defendants as compared to identically situated businesses, both within and without the State of New York.

114.    The provisions of Executive Order 202.52 that prohibit a bar that enforces all mandated and other appropriate social distancing measures from serving a drink to a patron unless that patron orders and eats food do not serve any compelling or even significant government interest and is not narrowly tailored to achieve any legitimate state purpose.

115.    All Plaintiffs have been injured by the disparate treatment to which they were subjected.

## **FOURTH CLAIM FOR RELIEF**

## **VIOLATION OF THE 5TH & 14TH AMENDMENTS - PROCEDURAL DUE PROCESS**
### **(42 U.S.C. § 1983)**

116.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

117.    The Fifth Amendment, by and through the Fourteenth Amendment, provides procedural due process rights to individuals.  Defendants' actions have violated Plaintiffs' procedural due process rights.

118.    The Fourteenth Amendment to the United States Constitution has been used to apply the protections of the Fifth Amendment to those violations of persons' rights by the States. The Fourteenth Amendment provides, in relevant part: "No state shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States; nor shall any

state deprive any person of life, liberty, or property without due process of law" (the "Due Process

Clause"). *U.S. Const. amend. XIV.*

119.    Plaintiffs have a property interest in their liquor license which is protected by the

United States Constitution.

120.    Plaintiffs have an extremely substantial interest that has been affected by the

Defendants' acts – the ability to make a living.

121.    There is no governmental interest in ensuring that bar patrons who observe all

social distancing measures eat while they do so.

122.    Although the State has a legitimate interest in enduring that all social distancing

measures are enforced by businesses and observed by patrons, there is no rational connection

between that interest and mandating that people order food in order to drink while observing all

social distancing measures.

123.    Plaintiffs were not given notice that their liquor license was to be suspended.

Plaintiffs received only one warning as to any violation of license conditions.

124.    Plaintiffs have requested but not been afforded any post-deprivation hearing.

Defendants have informed Plaintiffs that they have no plan to provide Plaintiffs with a hearing.

125.    Contrary to the normal process of the SLA, Plaintiffs were not provided with a

post-deprivation hearing within seven days of the summary suspension of their liquor license.

126.    Plaintiffs have not been afforded any meaningful opportunity to respond to any

allegation or determination made by the SLA as the basis for summary suspension of their liquor

license.

127.    Defendants violated Plaintiffs procedural due process rights when they failed to make available to Plaintiffs a process adequate to safeguard Plaintiffs' protected property interest in their liquor license.

128.    Plaintiffs have been injured by the deprivation of their due process rights because they have not been able to operate or earn a living.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF ART. I, SEC. 10 OF U.S. CONSTITUTION**
**(42 U.S.C. § 1983)**

129.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

130.    The Contracts Clause of the United States Constitution provides, among other things, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." *U.S. Const. art. I, sec. 10, cl. 1.*

131.    The Supreme Court has interpreted the Contracts Clause to prevent the government from interfering with contracts between private parties, and has applied this limitation to the individual state governments. *See, e.g., U.S. v. Winstar Corp., 518 U.S. 839* (1996) (citing *Fletcher v. Peck*, 10 U.S. 87 (1810)).

132.    As described above, Defendants have placed undue and excessive burdens upon Plaintiffs' conduct of business during the COVID-19 pandemic.

133.    Such burdens include, but are certainly not limited to, impairing Plaintiffs' obligations under contracts with its landlord, with vendors, and with equipment lessors.

134.    Accordingly, Plaintiff seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing Executive Order

202.52 to the extent that any such enforcement would impede Plaintiffs' private contracts with third parties.

## SIXTH CLAIM FOR RELIEF

## DEFENDANTS' VIOLATION OF N.Y.S. EXECUTIVE LAW § 29-A

135.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

136.   New York State Executive Law § 29-a provides that "[t]he governor may by executive order temporarily suspend . . . any statute, local law, ordinance, or orders, rules or regulations . . . during a state disaster emergency, if compliance . . . would prevent, hinder, or delay action necessary to cope with the disaster."

137.   New York State Executive Law § 29-a purports to grant Defendant Cuomo, by the issuance of Executive Order(s), emergency powers so as to suspend certain laws, and so as issue certain directives, when a State Disaster Emergency has been declared.

138.   Although Executive Law § 29-a confers certain powers upon Defendant Cuomo, it also imposes certain restrictions upon him; namely, that actions taken pursuant to Defendant Cuomo's authority thereunder be "reasonably necessary to aid in the disaster effort," and that such actions provide for the "minimum deviation" from the suspended statute, law, etc., while remaining consistent with the goals of the disaster action.

139.   Defendants' actions in issuing and enforcing Executive Order 202.52, and in subsequently enforcing same as against Plaintiffs, were neither reasonably necessary, nor the minimum deviation from any suspended statute, law, etc., so as to allow the State of New York to do its part in combatting the COVID-19 pandemic and promoting public safety.

140.     By reason of the foregoing, Defendant Cuomo has far exceeded his executive authority under Executive Law § 29-a, even by the standards set forth by the Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

141.     Accordingly, Plaintiff seeks a declaration of this Court providing that Defendant Cuomo's actions exceed the scope of his powers under New York State Executive Law § 29-a.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

<u>**ULTRA VIRES STATE ACTION IN VIOLATION OF FEDERAL RIGHTS**</u>

142.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

143.     Defendant Cuomo relies on New York State Executive Law § 29-a as the basis for Executive Order 202.52. Executive Law § 29-a provides in pertinent part as follows:

c.     Subject to the state constitution, the federal constitution and federal statutes and regulations, the governor may by executive order temporarily suspend specific provisions of any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action necessary to cope with the disaster.

d.     Suspensions pursuant to subdivision one of this section shall be subject to the following standards and limits:

ii.     no suspension shall be made which does not safeguard the health and welfare of the public and which is not reasonably necessary to the disaster effort;

144.     Executive Order 202.52 is ultra vires the statute on which Defendant Cuomo relies in that Cuomo has legislated rather than confining himself to the limited process of temporarily suspending certain laws, orders, rules or regulations by executive order."

145.     Executive Order 202.52 is ultra vires the statute on which Defendant Cuomo relies in that the requirement that bars can serve a drink only to patrons who order and eat food does nothing to safeguard the health and welfare of the public and is not reasonably necessary to the disaster effort.

146.     Defendant Cuomo's ultra vires acts, as enforced by him and Defendants, should be declared void and unenforceable, as they constitute state action in violation of all the constitutional rights which Executive Order 202.52 infringes upon, as pleaded above.

147.     In the absence of declaratory and injunctive relief voiding and enjoining Defendants' ultra vires acts, Plaintiffs will be irreparably harmed.

148.     Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

## **EIGHTH CLAIM FOR RELIEF**

## **FABRICATION OF EVIDENCE**

149.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

150.     Defendants Welker and Sands SLA reported to the SLA that Plaintiff Ehmann did not offer food to her customers and instead allowed them to order food from neighboring restaurants.

151.     This information was relied upon by the SLA in summarily suspending Plaintiff Ehmann's liquor license.

152.     This information was false.

153.     Plaintiff Ehmann's liquor license was summarily suspended based upon this false information.

154.     Plaintiff Ehmann was harmed by the loss of her property right – the liquor license – based upon this false information.

155.     Plaintiff has been injured by the fabrication of evidence because they have not been able to operate or earn a living.

## NINTH CLAIM FOR RELIEF

### ATTORNEY'S FEES AND COSTS UNDER 42 U.S.C. § 1988

156.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint, as if fully set forth herein.

157.     42 U.S.C. § 1988(b) provides, in relevant part, as follows: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"

158.     The Supreme Court, in *Hutto v. Finney*, 437 U.S. 678 (1978), affirmed the Court's discretion to award attorney's fees to the prevailing party under 42 U.S.C. § 1988, in actions where a plaintiff is seeking redress for the deprivation of constitutional rights under 42 U.S.C. § 1983.

159.     Here, Plaintiff's First, Second, Third and Fourth Claims for Relief are each brought to enforce a provision of 42 U.S.C. § 1983 – namely, that, under color of State law, Defendants have subjected Plaintiffs to the egregious deprivation of certain rights, privileges, and immunities secured by the United States Constitution. *See* 42 U.S.C. § 1983.

160.    Accordingly, Plaintiffs seek their reasonable attorney fees as part of its costs in seeking redress for the deprivation of its constitutional rights under 42 U.S.C. § 1983.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff asks this Court:

A)    On her First Claim for Relief, that this Court issue and enter a declaratory judgment pursuant to 28 USC § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that Executive Order 202.52 is facially and substantively unconstitutional; and that this Court issue a preliminary injunction enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the summary suspension issued removing Plaintiffs' right to open and operate Lucky as such summary suspension was pursuant to this unconstitutional Executive Order;

B)    On her Second Claim for Relief, that this Court award Plaintiff damages against Defendants for a violation of her rights by taking retaliatory action against Plaintiffs due to Plaintiff Ehmann's exercise of her First Amendment right to petition the government for a redress grievances, which received media attention after being posted on change.org and that this Court issue a preliminary injunction enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the summary suspension issued removing Plaintiffs' right to open and operate Lucky;

C)    On her Third Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders as arbitrary restrictions on Plaintiff Ehmann, in violation of Plaintiff's Fifth and Fourteenth Amendment substantive due process rights and that this Court issue a preliminary injunction enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the summary suspension issued removing Plaintiffs' right to open and operate Lucky;

D)    On her Fourth Claim for Relief, that this Court enter an Order permanently enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders as arbitrary restrictions on Plaintiff Ehmann, in violation of Plaintiff's Fifth and Fourteenth Amendment procedural due process rights and that this Court issue a preliminary injunction enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the summary suspension issued removing Plaintiffs' right to open and operate Lucky;

E)    On her Fifth Claim for Relief, that this Court issue a permanent injunction enjoining Defendants, or other applicable governmental/law enforcement authorities, from enforcing the Executive Orders, as any such enforcement would unconstitutionally impede Plaintiff Ehmann's private contracts with clients, independent contractors, vendors and other parties;

F)    On her Sixth Claim for Relief, that this Court issue a declaratory judgment that Defendant Cuomo's actions exceed the scope of his powers under New York State Executive Law § 29-a.

G)    On her Seventh Claim for Relief, that this Court issue a declaratory judgment that defendant Cuomo's requirement that bars serve food with every drink imposed by executive order are ultra vires his authority under Executive Law § 29-a, void and unconstitutional both facially and as applied to plaintiffs; and

H)    On her Eighth Claim for Relief, that this Court award Plaintiff damages against the SLA for the violation of her rights due to the fabrication of evidence; and

I)    On her Ninth Claim for Relief, that this Court enter an Order awarding Plaintiff her reasonable attorney fees, costs, for Plaintiff seeking redress for Defendants' violations of Plaintiffs' constitutional rights under  42 U.S.C. § 1988 and other applicable law; and

J)    to grant such other and further relief as this Court should find just and proper.


DATED:        August 28, 2020
              New York, NY

                              /s/ *Wylie M. Stecklow, Esq.*
                              Wylie M. Stecklow, Esq.
                              Jon Avins, Esq.
                              Wylie Stecklow PLLC
                              *Attorneys for Plaintiffs*
                              231 West 96th Street
                              Professional Suite 2B
                              New York, NY 10025
                              (212) 566 8000
                              ECF@Wylielaw.com